UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JEFFREY W. BRAEGER,<br><br>        Plaintiff,<br><br>    v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>        Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 1:11-cv-01931 - JLT<br><br>ORDER DIRECTING ENTRY OF JUDGMENT IN FAVOR OF DEFENDANT MICHAEL J. ASTRUE, COMMISSIONER OF SOCIAL SECURITY, AND AGAINST PLAINTIFF JEFFREY W. BRAEGER |

       Jeffrey W. Braeger ("Plaintiff") asserts he is entitled to disability insurance benefits under Title II of the Social Security Act. Plaintiff argues the administrative law judge ("ALJ") erred evaluating of the medical evidence and determining Plaintiff's credibility. Therefore, Plaintiff seeks judicial review of the administrative decision denying his claim for benefits. For the reasons set forth below, the administrative decision is **AFFIRMED**.

## PROCEDURAL HISTORY

       Plaintiff filed an application for disability insurance benefits on June 9, 2007, alleging disability beginning April 16, 2006. (Doc. 8-3 at 21). The Social Security Administration denied his claims initially and upon reconsideration. *Id*. After requesting a hearing, Plaintiff testified before an ALJ on September 16, 2009. *Id*. The ALJ determined Plaintiff was not disabled under the Social Security Act, and issued an order denying benefits on January 29, 2010. *Id*. at 21-30. Plaintiff

1

requested a review by the Appeals Council of Social Security, which found no reason to review the ALJ's decision on September 19, 2011.[1] *Id.* at 2-6. Therefore, the ALJ's determination became the decision of the Commissioner of Social Security ("Commissioner").

Plaintiff initiated this action on November 17, 2011, seeking review of the Commissioner's decision. (Doc. 1). On July 18, 2012, Plaintiff filed his opening brief, asserting the ALJ failed to follow the proper legal standards and the decision was not supported by substantial evidence. (Doc. 11). Defendant filed a brief in opposition on September 17, 2012 (Doc. 16), to which Plaintiff filed a reply on October 2, 2012. (Doc. 16).

## STANDARD OF REVIEW

District courts have a limited scope of judicial review for disability claims after a decision by the Commissioner to deny benefits under the Social Security Act. When reviewing findings of fact, such as whether a claimant was disabled, the Court must determine whether the Commissioner's decision is supported by substantial evidence or is based on legal error. 42 U.S.C. § 405(g). The ALJ's determination that the claimant is not disabled must be upheld by the Court if the proper legal standards were applied and the findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health & Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

Substantial evidence is "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197 (1938)). The record as a whole must be considered, because "[t]he court must consider both evidence that supports and evidence that detracts from the ALJ's conclusion." *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## DISABILITY BENEFITS

To qualify for benefits under the Social Security Act, Plaintiff must establish he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment

---

[1] As noted by the Appeals Council, Plaintiff was found to be under a disability beginning April 12, 2010, based upon a subsequent application for supplemental security income benefits. (Doc. 8-3 at 3). The Appeals Council "concluded that the subsequent allowance under a different Title does not warrant a change in the Administrative Law Judge's decision that [Plaintiff] was not disabled under Title II prior to the expiration of [his] insured status . . ." *Id.*

that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). An individual shall be considered to have a disability only if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B). The burden of proof is on a claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990). When a claimant establishes a prima facie case of disability, the burden shifts to the Commissioner to prove the claimant is able to engage in other substantial gainful employment. *Maounis v. Heckler*, 738 F.2d 1032, 1034 (9th Cir. 1984).

## **DETERMINATION OF DISABILITY**

To achieve uniform decisions, the Commissioner established a sequential five-step process for evaluating a claimant's alleged disability. 20 C.F.R. §§ 404.1520 (a)-(f). The process requires the ALJ to determine whether Plaintiff (1) engaged in substantial gainful activity during the period of alleged disability, (2) had medically determinable severe impairments (3) that met or equaled one of the listed impairments set forth in 20 C.F.R. § 404, Subpart P, Appendix 1; and whether Plaintiff (4) had the residual functional capacity to perform to past relevant work or (5) the ability to perform other work existing in significant numbers at the state and national level. *Id.* The ALJ must consider objective medical evidence and opinion (hearing) testimony. 20 C.F.R. §§ 404.1527, 404.1529.

**A.    Relevant Medical Opinions**[2]

Dr. Fabria Vesali performed a comprehensive neurologic evaluation on December 19, 2007. (Doc. 8-11 at 50-54). Plaintiff complained of having chronic low back pain for two years after suffering a back injury at work when "[a]n air conditioner fell and hit him on the chest from the second floor." *Id.* at 50. Plaintiff reported the pain was aggravated by "bending, moving, walking

---

[2] Due to the amount of the medical evidence, the Court declines to detail all of the treatment notes presented in the record, and here summarizes only the medical opinions, defined by the Regulations as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis, and prognosis, what you can do despite your impairment(s), and your physical or mental restrictions." 20 C.F.R. § 404.1527(a)(2). Nevertheless, the Court has read and considered the entirety of the treatment notes contained in the record.

more than 15 feet, lying down flat on his back." *Id.* In addition, Plaintiff reported "he was exposed to a chemical called TDI in 1989 that induced severe asthma," which was aggravated by humidity, dust, and smoke. *Id.* at 51. Further, Plaintiff stated he had "a history of passing out and shortness of breath due to asthma." *Id.* Plaintiff informed Dr. Vesali that he did not go grocery shopping, cook, or do any household chores. *Id.*

Dr. Vesali noted Plaintiff "had some difficulty taking off his shoes and putting them back on." (Doc. 8-11 at 52). In addition, Dr. Vesali observed: "The claimant was walking with a normal gait outside the examining room. When I asked him to walk in the exam room, he was walking with an obvious limp. He did not have any difficulty getting on or off the exam table." *Id.* at 51-52. Dr. Vesali performed several tests on Plaintiff's back, including the Spurling test and Phalen test, which had negative results. *Id.* at 53. Also, Dr. Vesali found "[a]xial compression of [the] spine did not cause aggravated low back pain." *Id.* Plaintiff gave an "inconsistent effort" in his motor strength test, but Dr. Vesali opined Plaintiff's motor strength was "5/5 in upper and lower extremities bilaterally." *Id.* at 53. Although Plaintiff reported "a history of passing out," Dr. Vesali noted Plaintiff did not have any bruising, signs of erythema or wounds from hitting objects while falling. *Id.* at 54. Based upon the examination, Dr. Vesali offered the following residual functional capacity assessment:

> [T]he claimant should be able to stand and walk for four hours in an eight-hour day with normal breaks every two hours for rest and stretching. The limitation is due to chronic low back pain with positive MRI for L5 nerve root displacement.
>
> The claimant should be able to sit six hours in an eight-hour day with normal breaks.
>
> The claimant does not need or use an assistive device for ambulation.
>
> The claimant should be able to lift 20 pounds occasionally and 10 pounds frequently. Limitation is due to chronic low back pain.

*Id.* at 54. Further, Dr. Vesali opined Plaintiff had "mild postural limitations" due to his low back pain, and required environmental limitations to prevent aggravation of his asthma. *Id.*

On January 2, 2008, Plaintiff reported to Cedarwood Medical Group for a consultative examination and pulmonary functioning test. (Doc. 8-11 at 55). However, the test was not administered because Plaintiff exhibited "labored breathing" and "respiratory distress." *Id.* at 55-56. Plaintiff returned to Cedarwood on February 21, 2008 for the pulmonary functioning test, and Dr.

Joseph Garfinkle opined Plaintiff demonstrated "very severe restriction." *Id.* at 57. Because Plaintiff passed out, the consultative examination was stopped prematurely. *Id.* at 60.

In March and April 2008, Dr. Jon Malan treated Plaintiff at Tehama County Health Services Agency. (Doc. 8-11 at 78-82). Dr. Malan noted Plaintiff brought "spine clinic notes showing bulging discs at L4-5 with radiculopathy." *Id.* at 79. In addition, Dr. Malan opined Plaintiff "has asthma with some COPD from smoking." *Id.* He observed Plaintiff was "apparently in need of spinal surgery on his L4 vertebrae area," but was applying for disability. *Id.* In addition, Dr. Malan noted Plaintiff was "looking to get some surgeries other procedures done for the pinched nerve in his back that is sending electrical shock type pains, pins and needs, and burning fire down his left leg." *Id.* at 78. Because Plaintiff was paying the bill himself, Dr. Malan gave him sample muscle relaxers to ease the pain. *Id.*

Dr. Satish Sharma performed an internal medicine consultation on July 18, 2008. (Doc. 8-11 at 84-89). Plaintiff reported his back pain started after "he lifted [a] heavy object," and it was aggravated "anytime he stands, walks, lifts anything, bends, or sits in one position for a long period of time." *Id.* at 84. In addition, Plaintiff reported he has a history of depression and asthma. *Id.* at 84-85. Dr. Sharma observed Plaintiff "was wheezing and also was short of breath" during the examination. *Id.* at 86. Dr. Sharma tested Plaintiff's range of motion and strength, as well as his memory in recalling three words, with and without time delay. *Id.* at 87-88. Based upon the examination, Dr. Sharma concluded Plaintiff had the ability to lift and carry 10 pounds frequently and 20 pounds occasionally, stand and walk four hours with normal breaks, and sit for six hours. *Id.* at 88. According to Dr. Sharma, Plaintiff could only occasionally bend or stoop, but he had no further postural or manipulative limitations. *Id.*

On August 11, 2008, Dr. Francis Greene and Dr. P.M. Balso reviewed the medical record. (Doc. 8-11 at 92-99). Dr. Greene offered a physical residual functional capacity assessment, and opined Plaintiff could frequently lift and/or carry 10 pounds and 20 pounds occasionally. *Id.* at 93. In addition, Dr. Greene determined Plaintiff had the ability to stand and/or walk at least two hours in an eight-hour day and sit about six hours in an eight-hour day, with normal breaks for each. *Id.* Plaintiff did not have any postural, manipulative, or visual limitations. *Id.* at 93-95. However, Plaintiff needed to avoid any exposure to fumes, odors, dusts, gases, and poor ventilation. *Id.* at 95. Dr. Balson found

there was insufficient evidence that Plaintiff had any condition that impaired his mental functioning. *Id.* at 99.

Dr. Warren Borgquist, who treated Plaintiff at Forest Road and Wellness, provided a summary of Plaintiffs medical conditions on June 18, 2009. (Doc. 8-12 at 55-56). Dr. Borgquist noted he believed Plaintiff suffered from ankylosing spondylitis rather than the previously diagnosed herniated disk disease. *Id.* at 55. Dr. Borgquist observed Plaintiff was "[u]nable to stand" but noted also "when he stands, has to support himself, he cannot walk alone without support." *Id.* Dr. Borgquist concluded Plaintiff was "severely so limited with his range of motion in his back, and his multiple joint arthritis, that he is unemployable." *Id.*

**B.     Hearing Testimony**

Plaintiff testified before the ALJ at the hearing held on September 16, 2009. (Doc. 8-3 at 38). He reported he attended school through the ninth grade, and then took the GED to join the navy. *Id.* at 42. According to Plaintiff, he worked as a truck driver hauling gravel and steel between 1985 and 2000. *Id.* at 44-45. He said he performed maintenance work at an RV park from 2000 to 2005, and last worked as a maintenance manager at a retirement home, which included duties such as mowing the lawn, moving furniture between apartments, painting, replacing carpet, and cutting down trees. *Id.* at 43-45. Plaintiff testified that he suffered a spinal injury during April 2006 that put him "out of commission." *Id.* at 44.

He stated he suffered from "[s]evere pain all the time" throughout his body, as well as numbness in his left leg, which kept him from working. (Doc. 8-3 at 46-47). In addition, he reported he had breathing problems after being exposed to a chemical in 1997 or 1998, which caused tightness in his chest and dizziness that made him "blackout a lot." *Id.* at 48-49. Also, Plaintiff said his family told him that he suffered seizures in his sleep. *Id.* at 48. According to Plaintiff, he suffered from depression, which caused him to not be able to focus or make decisions. *Id.* at 52.

Plaintiff reported his doctors were treating these impairments with methotrexate, painkillers such as Vicadin, and a nebulizer. (Doc. 8-3 at 47). He stated he used a nebulizer each day, which took "10 minutes in the morning and in the evening." *Id.* at 48. Also, he said he used the nebulizer in the afternoon if he was "real tight chested." *Id.* He testified methotrexate impaired his functioning,

and his prescriptions made him unable to think. *Id.* at 49. In addition, he said the medication caused him to lose weight "constantly" for two years, and he was "down to a little less than 136." *Id.* at 42.

According to Plaintiff, he lived with his uncle because he required assistance. (Doc. 8-3 at 50). He explained getting up in the morning was the toughest time of day: "It takes me four or five hours in the morning to get up. A lot of pain, stiffness, just can't move, so I can get help getting dressed and I also get help taking a shower." *Id.* However, Plaintiff said he was "okay" once he was in a wheelchair he said was prescribed by Dr. Borgquist. *Id.* On a typical day, Plaintiff said he would "stay flat in bed a lot." *Id.* at 51.

Plaintiff testified that he was unable to walk, but "could stand with a lot of pain." (Doc. 8-3 at 52). However, he explained standing caused his blood pressure to go "through the roof" because it took so much effort to try to stand. *Id.* at 53. Plaintiff said he was able to bathe and dress himself without assistance. *Id.* He said he did not prepare his meals but did not require assistance eating. *Id.* at 53-54. Plaintiff reported that sometimes he would not "eat for three to four days" because the methotrexate, which he took every Thursday at 2:00 p.m., made him too ill to eat. *Id.*

Vocational expert Stephen Schmidt ("VE") testified at the hearing also. (Doc. 8-3 at 60). The VE explained Plaintiff's past relevant work as a maintenance manager and truck driver were "both medium skilled" work under the definitions in the *Dictionary of Occupational Titles*.[3] *Id.* at 61. However, the VE explained both were "heavy" work as performed by Plaintiff. *Id.*

The ALJ asked the VE to consider an individual with the same age and educational background as Plaintiff. (Doc. 8-3 at 61). The ALJ explained the hypothetical individual "can lift 20 pounds occasionally and 10 pounds frequently, can stand and walk in combination for four hours in a work day and can sit six hours in a workday." *Id.* In addition, the worker had the ability to occasionally bend, stoop, twist, squat, kneel, crawl and climb stairs, but could not climb roles, ladders, or scaffolding." *Id.* Due to respiratory limitations, the worker should avoid "excessive amounts of dust, fumes, smoke, or other respiratory irritants." *Id.* Finally, the ALJ explained the worker "would

---

[3] The *Dictionary of Occupational Titles* ("*DOT*") by the United States Dept. of Labor, Employment & Training Admin., may be relied upon "in evaluating whether the claimant is able to perform work in the national economy." *Terry v. Sullivan*, 903 F.2d 1273, 1276 (9th Cir. 1990). The *DOT* classifies jobs by their exertional and skill requirements, and may be a primary source of information for the ALJ or Commissioner. 20 C.F.R. § 404.1566(d)(1).

be better suited for jobs involving only simple instructions." *Id.* The VE opined the individual could perform sedentary work in the national economy, such as assembly (*DOT* 726.684-110) and information clerk (*DOT* 237.367-046), as well as light work as a sewing operator (*DOT* 787.685-010). *Id.* at 61-62.

Plaintiff's counsel asked the VE to consider a hypothetical individual, based upon Plaintiff's testimony, who was "unable to walk, but . . . able to stand with assistance, leaning on something." (Doc. 8-3 at 63). In addition, the person would become "fatigued and short of breath during any physical activity." *Id.* Based upon these two factors, the VE opined such a person would not be able to perform Plaintiff's past relevant work. *Id.* Likewise, the person would be unable to perform any full time work in the national economy. *Id.*

**C.    The ALJ's Findings**

Pursuant to the five-step process, the ALJ determined Plaintiff did not engage in substantial gainful activity from the alleged onset date of April 16, 2006 through his date last insured of September 30, 2008. (Doc. 8-3 at 23). Second, the ALJ found Plaintiff had the following severe impairments: degenerative disc disease in the lumbar spine and asthma. *Id.* These impairments did not meet or medically equal a Listing. *Id.* at 23-24. Next, the ALJ determined:

> [T]hrough the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except standing and/or walking 4 hours in combination. The claimant can occasionally bend, stoop, twist, squat, kneel, climb stairs, and crawl. The claimant may never climb ropes, ladders, or scaffolds. The claimant should avoid hazards such as heights and moving machinery, and should not be exposed to concentrated levels of fumes, dust, smoke, and respiratory irritants.

*Id.* at 25. With this RFC, Plaintiff was unable to perform past relevant work. *Id.* at 28. However, the ALJ determined "there were jobs that existed in significant numbers in the national economy that the claimant could have performed." *Id.* at 29. Therefore, the ALJ concluded Plaintiff was not disabled as defined by the Social Security Act. *Id.* at 30.

## DISCUSSION AND ANALYSIS

**A.    Step Two of the Sequential Evaluation**

The inquiry at step two is a de minimus screening "to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citing *Bowen v. Yucket*, 482 U.S. 137, 153-54 (1987)).

The purpose is to identify claimants whose medical impairment makes it unlikely they would be disabled even if age, education, and experience are considered. *Bowen*, 482 U.S. at 153 (1987). A claimant must make a "threshold showing" (1) he has a medically determinable impairment or combination of impairments and (2) the impairment or combination of impairments is severe. *Id.* at 146-47; *see also* 20 C.F.R. §§ 404.1520(c), 416.920(c). Thus, the burden of proof is on the claimant to establish a medically determinable severe impairment. *Id.*

An impairment, or combination thereof, is "not severe" only if the evidence establishes that it has "no more than a minimal effect on an individual's ability to do work." *Smolen*, 80 F.3d at 1290. Previously, this Court explained: "A mere recitation of a medical diagnosis does not demonstrate how that condition impacts plaintiff's ability to engage in basic work activities. Put another way, a medical diagnosis does not an impairment make." *Nottoli v. Astrue*, 2011 U.S. Dist. LEXIS 15850, at *8 (E.D. Cal. Feb. 16, 2011); *Huynh v. Astrue*, 2009 U.S. Dist. LEXIS 91015, at *6 (E.D. Cal. Sept. 30, 2009); *see also Matthews v. Shalala*, 10 F.3d 678 (9th Cir. 1993) ("The mere existence of an impairment is insufficient proof of a disability"). For an impairment to be "severe," it must significantly limit the claimant's physical or mental ability to do basic work activities, or the "abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1520(c), 416.920(c), 416.921(b).

Plaintiff contends the ALJ erred at step two in finding his depression was not a severe impairment. (Doc. 11 at 18-19). The ALJ noted Plaintiff had "a medically determinable mental impairment of depression, secondary to his physical impairment." (Doc. 8-3 at 24). However, the ALJ opined Plaintiff's depression was "non-severe," observing: "He is not receiving treatment for his depression. He also did not allege any symptoms from his depression that cause more than minimal limitation in the claimant's ability to perform basic mental work activities." *Id.*

Supporting this determination, the ALJ considered the four functional areas known as the "paragraph B" criteria for Listing 12.00C. First, the ALJ determined Plaintiff had "mild limitation" in his activities of daily living. (Doc. 8-3 at 24). Next, the ALJ found Plaintiff "had no limitation" in social functioning, or concentration, persistence, or pace. *Id.* Finally, Plaintiff did not have any episodes of decompensation of extended duration. *Id.* The ALJ concluded, "Because the claimant's medically determinable mental impairment cause no more than 'mild' limitation in any of the first

three functional areas and 'no' episodes of decompensation which have been of extended duration in the fourth area, it was nonsevere." *Id.* (citing 20 C.F.R. § 404.1520a(d)(1)).

According to Plaintiff, "Although [he] admittedly does not receive treatment in the form of a mental health specialist, he does receive treatment in the form of the antidepressant amitrypaline, which he has been prescribed for some time." (Doc. 11 at 19). Further, Plaintiff contends the ALJ's assertion that he did not allege symptoms relating to depression with more than a minimal effect on his ability to perform mental work activities "is simply false" because during the hearing he "described his depression as preventing him from concentrating, making decisions, and focusing." *Id.* at 19. However, as discussed below, the ALJ properly rejected Plaintiff's credibility concerning the limiting effect of his impairments.

Significantly, the step two determination is supported by objective evidence in the record. As noted by the ALJ: "During the consultative examiner's mental status test, the claimant's memory recall was three of three words immediately and two words in five minutes." (Doc. 8-3 at 24). Although Plaintiff protests this test is "absurdly undemanding" and "he would have to be completely mentally crippled in order to fail such criteria," such memory recall tests are commonly used by medical professionals to determine the effect of a claimant's alleged mental impairments. *See, e.g., Louis v. Astrue*, 2011 U.S. Dist. LEXIS 89834, at *17 (E.D. Cal. Aug. 12, 2011) (the consultative medical examiner noted the claimant's "[m]emory recall was three of three words immediately and two of three words after five minutes"); *Perez v. Astrue*, 2011 U.S. Dist. LEXIS 131055, at *8 (E.D. Cal. Nov. 14, 2011) (observing the consultative examiner found the claimant's memory was poor, based in part upon his "memory of three words," with and without time delay); *Spain v. Astrue*, 2012 U.S. Dist. LEXIS 99311, at *24 (E.D. Cal. July 17, 2012) (the psychiatric consultative examiner found the claimant's memory an concentration span were within normal limits where the claimant "was able to recall three of three objects in three minutes"); *Randall v. Astrue*, 2012 U.S. Dist. LEXIS 105952, at *24 (E.D. Cal. July 20, 2012) (noting the claimant's "recent memory was impaired" where "she could remember one out of three objects after a few minutes").

Indeed, the Regulations provide such tests are evidence of a claimant's ability to concentrate: "In psychological tests of intelligence or memory, concentration is assessed through tasks requiring

short-term memory or tasks that must be completed within established time limits." 20 C.F.R. pt. 404, subpt. P, App. 1, § 12.00(C)(3). Thus, Dr. Sharma's memory test and findings that Plaintiff could recall three of three words immediately and two words after a delay supports the ALJ's step two determination that Plaintiff's depression was not a severe impairment.[4]

**B.     The ALJ's evaluation of the medical evidence is supported by substantial evidence.**

In this circuit, cases distinguish the opinions of three categories of physicians: (1) treating physicians; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither examine nor treat the claimant. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Generally, the opinion of a treating physician is afforded the greatest weight in disability cases, but it is not binding on an ALJ in determining the existence of an impairment or on the ultimate issue of a disability. *Id.*; *see also* 20 C.F.R. § 404.1527(d)(2); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Plaintiff asserts, "The ALJ erred in granting no weight to the functional capacity assessment of treating physician Borgquist." (Doc. 11 at 11). However, Dr. Borgquist did not offer a functional capacity assessment for consideration by the ALJ. A medical opinion is a statement of what a claimant can do despite his limitations, reflecting judgment about the nature and severity of a claimant's impairments, and his physical and mental restrictions. *See* 20 C.F.R. §§ 404.1527(a)(2), 404.1545. While there are a number of treatment notes from Dr. Borgquist, and he noted that "disability papers were filled out for [Plaintiff's] attorney," Dr. Borgquist did not offer an explanation of Plaintiff's limitations and abilities. Rather, Dr. Borgquist offered only his conclusion that Plaintiff was "severely so limited with his range of motion in his back, and his multiple joint arthritis, that he is unemployable." (Doc. 8-12 at 55). As observed by the ALJ, "[I]t is unclear whether [Dr. Borgquist] is familiar with the definition of 'disability' contained in the Social Security Act and regulations." (Doc. 8-3 at 27).

---

[4] Notably, even if the Court were to find the ALJ erred in finding Plaintiff's depression was "not severe" at step two, any error in designating specific impairments as severe at step two is harmless. *See Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (holding that any error in omitting an impairment from the severe impairments identified at step two was harmless where the step was resolved in the claimant's favor). Here, because the ALJ determined Plaintiff had medically determinable severe impairments, step two was resolved in Plaintiff's favor.

Significantly, the determination of whether a claimant is disabled is reserved for the Commissioner, and statements "by a medical source that [a claimant] is 'disabled' or 'unable to work'" "are not medical opinions." 20 C.F.R. § 404.1527(e). Recently, this Court explained that "an ALJ is not obligated to provide detailed reasons for rejecting a medical expert's opinion regarding the ultimate question of disability." *James v. Astrue*, 2012 U.S. Dist. LEXIS 139929, at * 25 (E.D. Cal. Sept. 27, 2012) (citing *Nyman v. Heckler*, 779 F.2d 528, 531 (9th Cir. 1985)). Dr. Borgquist's belief that Plaintiff was "unemployable" is a statement "that would direct the determination or decision of disability." *See* 20 C.F.R. § 404.1527(e). Accordingly, it is an issue reserved for the Commissioner, and the ALJ's rejection of Dr. Borgquist's statement as to Plaintiff's disability was proper.

**C.     Dr. Borgquist's statement presented to the Appeals Council is not material evidence.**

Plaintiff's counsel submitted an additional statement from Dr. Borgquist dated April 23, 2010, to the Appeals Council for its consideration with Plaintiff's request for review. (Doc. 8-13 at 102-06). The Appeals Council noted: "The Administrative Law Judge decided your case through September 30, 2008, the date you were last insured for disability benefits. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits." (Doc. 8-3 at 2). Nevertheless, when the Appeals Council considers evidence provided by a claimant after the ALJ's decision, the Court reviews both the ALJ's decision and additional material submitted to the Appeals Council. *Ramirez v. Shalala*, 8 F.3d 1449, 1451-52 (9th Cir. 1993).

Importantly, the Regulations provide: "In reviewing decisions based on an application for benefits, if new and material evidence is submitted, the Appeals Council shall consider the additional evidence *only* where it relates to the period *on or before* the date of the administrative law judge hearing decision." 20 C.F.R. §§ 404.970(b), 416.1470(b) (emphasis added). Evidence is material if it is "relevant to the claimant's condition for the time period for which benefits were denied." *Bergmann v. Apfel*, 207 F.3d 1065, 1069-70 (8th Cir. 2000) (evidence must not merely detail after-acquired conditions or post-decision deterioration of a pre-existing condition); *Gamer v. Sec'y of Health & Human Servs.*, 815 F.2d 1275, 1280 (9th Cir. 1987). In order to be entitled to disability insurance benefits, Plaintiff must establish that a disability existed at, or prior to, his date last insured.

*Vincent v. Heckler*, 739 F.2d 1393, 1394 (9th Cir. 1984). Accordingly, to be material evidence, the statement of Dr. Borgquist must relate to Plaintiff's condition prior to September 30, 2008. *See id.*

In his additional statement, Dr. Borgquist was attempting to provide "a summary of [Plaintiff's] actual medical condition." (Doc. 8-13 at 105). The narrative is written in the present tense, and does not explain when Dr. Borgquist believed the limitations currently noted began. Plaintiff does not show the additional information provided by Dr. Borgquist is material evidence that relates to his condition on or before the ALJ's decision, or that the evidence discusses his impairments prior to September 30, 2008. Therefore, the additional statement presented to the Appeals Council is neither material evidence, nor substantial evidence in support of a disability determination.

**D.    The RFC set forth by the ALJ is supported by substantial evidence.**

The ALJ determined Plaintiff was able "to perform light work as defined in 20 C.F.R. 404.1567(b)[5], except standing and/or walking in 4 hours in combination." (Doc. 8-3 at 25). The ALJ found Plaintiff could "occasionally bend, stoop, twist, squat, kneel, climb stairs, and crawl," but "never climb ropes, ladders or scaffolds." *Id.* In addition, Plaintiff had environmental limitations and "should avoid hazards such as heights and moving machinery, and should not be exposed to concentrated levels of fume, dust, smoke, and respiratory irritants." *Id.* These findings appear to be based upon the assessments of Dr. Vesali and Dr. Sharma, examining physicians whose opinions the ALJ gave "great weight." *Id.* at 26-27.

Significantly, the opinion of an examining physician may be substantial evidence in support of the ALJ's decision when the opinion is based upon independent clinical findings. *Orn v. Astrue*, 295 F.3d 625, 632 (9th Cir. 2007); *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001). Here, following examination including the Spurling test and Phalen test, as well as tests of Plaintiff's motor strength and range of motion, Dr. Vesali opined Plaintiff "should be able to stand and walk for four hours in an eight-hour day with normal breaks;" "sit six hours in an eight-hour day with normal breaks;" [and] "lift and 20 pounds occasionally and 10 pounds frequently." (Doc. 8-11 at 54). Likewise, Dr. Sharma tested Plaintiff's range of motion and strength, and concluded Plaintiff had the

---

[5] As defined by the Regulations, "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

ability to lift and carry 10 pounds frequently and 20 pounds occasionally, stand and walk four hours with normal breaks, and to sit for six hours. (Doc. 8-11 at 88). Because Drs. Vesali and Sharma based their opinions upon independent clinical tests, the findings constitute substantial evidence.

Further, the opinions of non-examining physicians "may serve as substantial evidence when they are supported by other evidence in the record and are consistent with it." *Andrews v. Shalala*, 53 F.3d 1035, 1042 (9th Cir. 1995). Similar to Drs. Vesali and Sharma, Dr. Greene offered a physical residual functional capacity assessment in which he opined Plaintiff could frequently lift and/or carry 10 pounds and 20 pounds occasionally, stand and/or walk at least two hours in an eight-hour day, and sit about six hours in an eight-hour day. (Doc. 8-11 at 93). Although Dr. Greene opined Plaintiff did not have any postural limitations (*id.* at 93), the opinion remains consistent with the findings of Drs. Vesali and Sharma that Plaintiff could perform light work, and is substantial evidence in support of the RFC set forth by the ALJ.

**E.     The ALJ's credibility determination is supported by clear and convincing evidence.**

In determining credibility, an ALJ must determine first whether objective medical evidence shows an underlying impairment "which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Here, the ALJ determined Plaintiff's "medically determinable impairments could reasonably be expected to cause some of the alleged symptoms." (Doc. 8-3 at 27). However, the ALJ found Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [his] symptoms are not credible . . ." *Id.* Plaintiff asserts the ALJ improperly assessed his subjective symptom testimony, and failed to apply the proper legal standards. (Doc. 11 at 16-18).

An adverse finding of credibility must be based on clear and convincing evidence where there is no affirmative evidence of a claimant's malingering and "the record includes objective medical evidence establishing that the claimant suffers from an impairment that could reasonably produce the symptoms of which he complains." *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160 (9th Cir. 2008). The ALJ may not discredit a claimant's testimony as to the severity of symptoms only because it is unsupported by objective medical evidence. *See Bunnell*, 947 F.2d at 347-48. In

14

addition, the ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Lester v. Chater*, 81 F.3d 821, 834.

Factors that may be considered include, but are not limited to: (1) the claimant's reputation for truthfulness, (2) inconsistencies in testimony or between testimony and conduct; (3) the claimant's daily activities, (4) an unexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment and (5) testimony from physicians concerning the nature, severity, and effect of the symptoms of which the claimant complains. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see also Thomas v. Barnhart*, 278 F.3d 947, 958-59 (9th Cir. 2002). Here, the ALJ considered inconsistencies in Plaintiff's statements and conduct, and found "[t]he record includes evidence strongly suggesting that the claimant has exaggerated symptoms and limitations." (Doc. 8-3 at 27).

The Ninth Circuit explained an ALJ may consider "conflicts between the claimant's testimony and his conduct, or internal contradictions in testimony." *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004) (citing 20 C.F.R. § 404.1529(c); *Smolen*, 80 F.3d at 1281; *Bunnell*, 947 F.2d at 346). First, the ALJ noted inconsistencies in Plaintiff's conduct at the consultative examination performed by Dr. Vesali, because "Dr. Vesali observed the claimant to walk with an obvious limp while in the exam room, but [he] walked with a normal gait outside the exam room." (Doc. 8-3 at 27). In addition, Dr. Vesali noted Plaintiff "was hyperventilating at times during the exam," but at other times "he was breathing normally." *Id.*

Further, the ALJ considered inconsistent statements made by Plaintiff. For example, although Plaintiff testified Dr. Borgquist prescribed his wheelchair, Plaintiff arrived at his first appointment with Dr. Borgquist already using a wheelchair "because 'his right leg hurt[].'" (Doc. 8-3 at 27). The ALJ noted that "throughout the rest of the record, the claimant complains of *left* leg pain." *Id.* (emphasis added).

Based upon the considerations of Plaintiff's inconsistent statements and actions, the ALJ set forth clear and convincing reasons to reject Plaintiff's credibility. Accordingly, the ALJ satisfied the burden to make "a credibility determination with findings sufficiently specific to permit the court to conclude the ALJ did not arbitrarily discredit [the] claimant's testimony." *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002).

# CONCLUSION AND ORDER

Based upon the foregoing, the ALJ did not err in his evaluation of the medical evidence or Plaintiff's subjective testimony.  Because the ALJ applied the proper legal standards and his findings are supported by substantial evidence in the record, his determination that Plaintiff was not disabled prior to the date last insured must be upheld by the Court.  *See Sanchez*, 812 F.2d at 510.

Accordingly, **IT IS HEREBY ORDERED**:

1. The decision of the Commissioner of Social Security is **AFFIRMED**; and
2. The Clerk of Court **IS DIRECTED** to enter judgment in favor of Defendant Michael J. Astrue, Commissioner of Social Security, and against Plaintiff Jeffrey W. Braeger.

IT IS SO ORDERED.

Dated:   **October 17, 2012**          /s/ **Jennifer L. Thurston**
UNITED STATES MAGISTRATE JUDGE